

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

March 25, 1960

Judge Penn J. Jackson, Chairman
State Board of Insurance
International Life Building
Austin 14, Texas

Opinion No. WW-817

Re: Increase in premium
rates of state-wide mutual
assessment companies and
local mutual aid associations.

Dear Sir:

We have considered your opinion request of December 16, 1959, which reads in part as follows:

"...We make this general inquiry as to the powers and duties of state-wide mutual assessment associations organized and operating under the provisions of Chapters 13 and 14 of the Texas Insurance Code.

"May such mutual assessment associations increase premiums on outstanding policy contracts without the prior or subsequent approval of the State Board of Insurance?

"Under a long-established practice, such mutual assessment associations make application to the State Board of Insurance for permission to increase premiums. The applicants cite Art. 14.23 of the Insurance Code as the Board's authority for granting or ordering these requested increases. The present Board has continued to follow this departmental practice in a few cases."

It is also the understanding of this office that you have limited your request to those mutual companies which collect regular and periodic assessments in accordance with Article 14.23 of the Texas Insurance Code.

Mutual assessment insurance companies in Texas have the right to increase their rates to the extent that they are reasonable and necessary. See Attorney General Opinion O-3387, pp. 5 (1941). In the absence of a controlling statute, increases in assessments by mutual insurance companies is a matter which is governed by the company's charter, by-laws or the insurance contract. See American Juris., Vol. 29, Sec. 571, pp. 871.

Chapters 13 and 14 of the Texas Insurance Code governs mutual assessment companies, and Article 14.23 of the Code pertains to assessments and rate schedules:

"Each association shall levy regular and periodical assessments by whatever name they may be called. These assessments must be in such amounts and at such proper intervals as will meet the reasonable operating expenses of the association, and pay in full the claims arising under its certificates. When or if in the course of operation it shall be apparent that the claims cannot be met in full from current assessments and funds on hand, the amount must be increased until they are adequate to meet such claims, and the Board shall so order.

"When any association shall refuse to comply with the Board's recommendations or requirements respecting rates of assessments, it shall be treated as involvent, and shall be dealt with as is hereinafter provided.

"Each association operating under the provisions of this chapter shall file its rate schedules with the Board of Insurance Commissioners." (Emphasis Added).

On examination, Article 14.23 reveals the State Board of Insurance has jurisdiction to order an increase in assessment by an association only in the situation where the present assessment and the funds on hand are inadequate to pay the reasonable expenses and claims in full. The only criteria set out by Art. 14.23 as to the required amount of assessment is that it be sufficient to meet reasonable expenses and pay the claims in full, and to realize this end the Board shall order the association to increase the assessment. The association is to be regarded as insolvent in the event the association refuses to comply with the order of the Board. Thus, if the association takes the initiative by increasing the assessment, the Board is not required to pass on the propriety of this action since the only jurisdiction given the Board is to order the association to increase the assessment under the particular circumstances set out in 14.23.

This interpretation of 14.23 is strengthened by the fact that the primary purpose of Chapter 14, as revealed by Article 14.29, was to secure to the members of the mutual companies, the full payment of their claims. Prior to the enactment of this Chapter, many mutual

assessment associations were able to pay only a percentage of the face value of their policies because the respective assessments were not adequate. To make certain that sufficient funds would be available, the Board was directed to order increases in assessments by the association when it was determined that the funds would be insufficient to pay the claims in full.

In reaching this conclusion, we are not unmindful of the past departmental construction of Article 14.23, but we are of the opinion that Article 14.23 is not doubtful or ambiguous, and in the absence of ambiguity or uncertainty, contrary departmental construction of a statute is not deemed controlling. See 39 Tex. Jur. Sec. 126, pp. 235.

Chapters 13 or 14 do not control the raising of assessment rates except insofar as Article 14.23 directs the State Board of Insurance to order an assessment increase when the current assessment and funds on hand are inadequate to pay the reasonable expenses and claims. It is only in this situation that Article 14.23 confers the responsibility on the State Board of Insurance to order an association to raise its assessments. Otherwise, it is the responsibility of the management of the mutual assessment associations to make rate increases subject to the provisions of their respective charters, by-laws and insurance contracts.

## SUMMARY

The State Board of Insurance has jurisdiction under Article 14.23 to order a mutual assessment association to make an assessment increase only where it determines that the proceeds from the current assessment and funds on hand are inadequate to pay reasonable expenses and claims; otherwise, mutual assessment associations may make assessment increases subject to their respective charters, by-laws and insurance contracts.

Very truly yours,

WILL WILSON
Attorney General of Texas

By     *Bob E. Shannon*

Bob E. Shannon
Assistant Attorney General

APPROVED:

OPINION COMMITTEE:

W. V. Geppert, Chairman

William T. Blackburn
Fred B. Werkenthin
Bob Rowland
Larry Hargrove

REVIEWED FOR THE ATTORNEY GENERAL

BY:
    Leonard Passmore